IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Liebel-Flarsheim Co., et al, | : | Case No. 1:04-cv-607 |
| Plaintiffs, | : | Judge Sandra S. Beckwith |
| vs. | : | |
| Medrad Inc., | : | |
| Defendant. | : | |

ORDER

Before the Court is Defendant's Motion to Dismiss (Doc. 20). Plaintiffs have responded (Doc. 24), Defendant has replied (Doc. 28), and Plaintiffs have filed a sur-reply (Doc. 31).

Background

Plaintiffs filed their complaint on September 7, 2004, alleging that Medrad is infringing five of their patents, commonly referred to as the '669, '261, '612, '197, and '979 patents. (This action is related to another patent infringement action pending before this Court, Case No. 1:98-CV-858, involving the first four of these five patents.) The complaint in this case alleges that certain Medrad injectors, "including but not limited to injectors marketed under the names Solaris and Stellant," infringe various claims of the patents. See Complaint ¶9.

Plaintiff (hereafter "L-F") filed an amended complaint on Oct. 11, limiting its infringement allegations concerning

-1-

Medrad's Solaris injector to the '612, '197 and '979 patents. L-F did not amend the original allegations that the Stellant injector infringed all five of the patents. (See Doc. 4) This amended complaint followed a stipulation filed in Case No. 98-858 (See Doc. 428). There, Medrad stipulated that if the Court found that Medrad's Spectris injector (a product at issue in Case No. 98-858) infringes the '669 and '261 patents, Medrad's Solaris injector would also infringe those two patents. Thus, the practical effect of the amended complaint was to drop L-F's allegations that the Solaris injector infringes the '669 and '261 patents.

On May 23, 2005, L-F timely filed its Preliminary Infringement Contentions as required by the Case Management Schedule. (Doc. 18) There, L-F made no contention that any Medrad product infringed the '979 patent. L-F also made no contention that Medrad's Solaris injector infringed any of its patents. Thus, L-F's preliminary contentions limited the infringement claims to those under the '669, '261, '612 and '197 patents against Medrad's Stellant injector.

On May 25, 2005, Medrad's counsel wrote to L-F noting the narrowed scope of L-F's contentions. Medrad requested that L-F stipulate to dismissing the allegations of the amended complaint that L-F omitted from its preliminary contentions, provided that L-F was also willing to stipulate that "no current or past Medrad products infringe the '979 patent and that the current and past versions of the Solaris product do not infringe the '612 and '197

-2-

patents." (Doc. 20, Exhibit 1) L-F did not respond to Medrad's letter by June 1, and so Medrad sent a second letter asking for L-F's response. (Doc. 20, Exhibit 2)

On June 7, still having had no response from L-F to its letters, Medrad filed its motion to dismiss. Medrad seeks dismissal of the allegations in the amended complaint that L-F omitted from its preliminary infringement contentions. Medrad also seeks an award of fees and costs for the motion, and for its preparation of preliminary invalidity contentions concerning the '979 patent (as well as another L-F patent called the '758).

L-F opposes Medrad's motion. L-F labels Medrad's motion as "premature" in view of L-F's covenant not to sue, which was filed with the Court on July 5 in L-F's opposition. (See Doc. 24 at p. 2). L-F asserts that its covenant essentially terminates the dispute between the parties and this Court's jurisdiction over those claims. And L-F argues that Medrad's motion for sanctions is not justified by anything that occurred prior to the filing of Medrad's motion.

Medrad's reply (Doc. 28) contends that the covenant is not broad enough and/or is uncertain, and that its counterclaim concerning the '979 and '758 patents remains viable in the face of the covenant. L-F filed a sur-reply (Doc. 31).

The issues have, needless to say, been thoroughly briefed.

## ANALYSIS

1. <u>The Covenant Not To Sue</u>.

L-F covenanted not to sue Medrad for "(1) infringement of

any of the claims of the '979 and '758 patents based on the manufacture, use, sale and/or offer for sale of Stellant and/or Solaris injection systems that are or have been publicly available for purchase in the United States as of the date hereof; and (2) infringement of any of the claims of the '612 and '197 patents based on the manufacture, use, sale and/or offer for sale of Solaris injection systems that are or have been publicly available for purchase in the United States as of the date hereof."

The '758 patent was not included in L-F's complaint or amended complaint. It is at issue in this case solely by way of Medrad's counterclaim for non-infringement (Doc. 5).

Medrad asserts that the covenant does not completely resolve the disputes it purports to resolve. Medrad first contends that the language concerning the '979 patent fails to cover Medrad's syringes sold for use with the Solaris injector. The Court notes that L-F's complaint describes the infringing products as "injectors." The phrase "injection system" used in the covenant is not used in the complaint. However, it is evident that both parties assume that the phrase "injection system" is synonymous with "injector." Given this apparent agreement, the Court finds that L-F's covenant matches the claim made in its Complaint. L-F has no duty to provide Medrad a covenant concerning it's syringes, products which are not accused of infringing the '979 patent in the complaint or the preliminary infringement contentions.

-4-

Medrad next argues that the covenant is limited to sales in the United States, and should cover Medrad's international sales. L-F's sur-reply does not specifically address this point; L-F merely notes that the covenant language is taken from Medrad's covenant filed in a Pennsylvania action between the parties. The Court concludes that the covenant is not limited to sales within the United States. Rather, the covenant covers all sales (the "manufacture, use, sale and/or offer for sale") of the defined injection systems. The reference to "purchase in the United States" is to define the injection systems that are covered by the covenant – not to limit the territorial reach of the covenant not to sue.

Medrad next argues that the covenant fails to include its other injector products (Envision, Vistron, Pulsar, Spectris and MCT) with respect to the '979 and '758 patents. The complaint alleges that Medrad has infringed the '979 patent by the sale of "certain injectors including but not limited to injectors marketed under the names Stellant and Solaris." (See, e.g., Complaint ¶36) The preliminary infringement contentions are limited to the Stellant injector. L-F is not required to include in its covenant products that L-F did not place at issue in this case, such as the identified injector models that are clearly at issue in Case No. 98-858. And, as noted, L-F has never sued on the '758 patent, and thus has no obligation to provide a covenant concerning that patent broader than the one it has provided.

Medrad's last point concerning the covenant is that it "is

-5-

not entirely clear regarding future sales of the existing products." The covenant applies to the injection systems for sale "as of the date hereof." As with Medrad's foreign sales argument, the Court does not agree that the covenant is limited to **sales** "as of the date hereof" but to **products available for sale** "as of the date hereof." The Court therefore concludes that the covenant's terms apply to all "future" sales of the Stellant and/or Solaris injectors "that are or have been publicly available for purchase" as of July 5, 2005.

L-F argues that under Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995), its covenant not to sue eliminates any case or controversy concerning the '979 and '758 patents, and concerning the '612 and '197 patents as against the Solaris injector. In Super Sack, the Federal Circuit articulated its two-part test for justiciability of declaratory invalidity claims: "There must be both (1) an explicit threat or other action by the patentee, which creates a *reasonable* apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) *present* activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." Id., 57 F.3d at 1058 (internal citation and quotation omitted). The test determines whether or not federal jurisdiction is properly maintained over an alleged infringer's declaratory judgment claims.

As noted above, L-F did not sue Medrad for infringement of its '758 patent. There is nothing in the record to suggest that

-6-

Medrad faces a "reasonable apprehension" of an infringement suit based on the '758 patent. L-F's covenant concerning this patent ends any present case or controversy, and terminates this Court's Article III jurisdiction over Medrad's declaratory judgment counterclaim on the '758 patent.

Concerning the '979 patent, the same result is clearly mandated with respect to the Stellant and Solaris injectors. The Court lacks jurisdiction over these claims in light of the covenant. Medrad urges the Court to dismiss Count V of L-F's complaint, suggesting that result would bar L-F from future prosecution of **any** claims under the '979 patent against any Medrad product. The Court will not be drawn into an advisory opinion on a potential future dispute between the parties over this subject. If L-F harbors some secret intent to prosecute '979 infringement claims against any currently available Medrad product, as Medrad implies, that situation can be addressed when and if it manifests itself.

Concerning the '612 and '197 patent claims, Medrad's arguments are overly broad. The '612 and '197 patents are also at issue in Case No. 98-858. L-F has no duty or obligation to provide Medrad a covenant not to sue covering "all" of Medrad's products. Moreover, the complaint and amended complaint in this action make no allegation that any Medrad syringes infringe the '612 and '197 patents. Given the assumption that the covenant's reference to "injection systems" does **not** include syringes, the covenant plainly covers the claims alleged in the complaint

-7-

against the Solaris injector.  L-F need not do more.

L-F's covenant terminates the case or controversy between the parties on the claims described in the covenant.  Therefore, the Court lacks jurisdiction over those claims and counterclaims.  Medrad's motion is granted to the extent that L-F's claims of infringement of the '979 patent based on the Stellant and Solaris injection systems available for purchase in the United States as of July 5, 2005 are dismissed, and L-F's claims of infringement of the '612 and '197 patents based on the Solaris injection systems available for purchase in the United States as of July 5, 2005 are dismissed, both with prejudice.  L-F's claims of infringement of the '669, '261, '612 and '197 patents against the Stellant injector (or "injection system") remain pending.

    2.    <u>Medrad's Request for Sanctions</u>.

Medrad also seeks an award of sanctions, for its fees and costs incurred in filing its motion to dismiss as well as its preliminary invalidity contentions.  Medrad argues that L-F's failure to respond to its two letters (dated May 25 and June 1) forced Medrad to file its motion.  Then, L-F waited until the "last day possible" (July 5) to file its covenant not to sue, and then again failed to respond to Medrad's letter asking for changes to that covenant.

Neither party's conduct in the chain of events discussed above has been commendable.  L-F has failed to explain its silence in response to the two letters from Medrad's counsel concerning a stipulated dismissal.  L-F has failed to explain its

-8-

delay between the filing of its preliminary infringement contentions on May 23, and the filing of the covenant not to sue on July 5.  The Court also notes that at the May 11 conference, L-F said that the new infringement claims of the '979 patent were one reason that it needed discovery, yet only twelve days later those claims disappeared from this case.

On the other hand, Medrad obviously grew impatient with L-F's silence over a period of thirteen days, a period including the Memorial Day holiday.  Rather than pursuing the goal of a stipulation, or engaging in extrajudicial attempts to resolve this question, Medrad rushed to the courthouse to file a motion to dismiss.  The Court believes that the wording of a stipulation to dismiss is an issue that could and should have been resolved by a good faith effort between counsel for the parties.  And, if Medrad really found itself in a prejudicial situation due to L-F's silence, it should have contacted the Court.  The Court made it plain to all at the May 11 case management conference that "If you find yourselves at loggerheads, call us and we'll schedule a phone conference or an in-person conference."  (Doc. 19, p. 28)

Moreover, Medrad also seeks monetary sanctions for preparing its own invalidity contentions.  Those contentions (Doc. 22) address both the '979 patent that L-F had already dropped from its own preliminary contentions, and the '758 patent that L-F never raised in its complaint.  This effort was undertaken unilaterally by Medrad, and L-F is not to blame.

The Court will not grant sanctions against either party.

-9-

The Court is, however, concerned that the record in this case reflects an increasing level of tension, if not overt hostility, between counsel for the parties.  The Court thus takes this opportunity to remind all counsel of this district's Statement on Civility.  As noted there, common courtesy - politeness in conversation, respect for other's time and schedule, and an attitude of cooperation - plays an essential role in the administration of justice.  All counsel are well advised to keep these principles in mind as this case continues.

DATED: August 22, 2005                 s/Sandra S. Beckwith
                                       Sandra S. Beckwith, Chief Judge
                                          United States District Court